UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――

MICHAEL RODRIGUEZ,
         Plaintiff,

    -v-

NORWEIGIAN AIR SHUTTLE ASA,
*d/b/a* NORWEGIAN AIRLINES, *et al.*,
         Defendants.

22-CV-10246 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

  Michael Rodriguez brought this action for injuries allegedly sustained aboard a Norwegian Air Shuttle flight from New York, New York to Oslo, Norway on November 5 and 6, 2019. Defendants, Norwegian Air Shuttle ASA and certain subsidiaries controlled by it, move to dismiss Rodriguez's Amended Complaint, *inter alia*, under Federal Rule of Civil Procedure 12(b)(6), asserting that Rodriguez's claim is time-barred under the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Done at Montreal, Canada, on 28 May 1999, *reprinted in* S. TREATY DOC. 106-45, 1999 WL 33292734 (1999) (the "Montreal Convention"). For the reasons that follow, Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim is granted.

I.   **Background**

  A.   **Factual Background**

    1.   **Norwegian Air Flight DY7002**

  Plaintiff Michael Rodriguez traveled by a one-way overnight flight operated by Norwegian Air Shuttle ASA ("Norwegian") — flight DY7002 — from New York City to Oslo,

1

Norway.  (ECF No. 39 ("FAC") ¶ 4.)[1]  He departed the U.S. on November 5, 2019 and arrived in Oslo on November 6, 2019.  (*Id.*)  During the flight, at some time either late on November 5 or early on November 6, 2019, Rodriguez "became ill, sick[,] sore and lame from noxious fumes, impurities or other condition[s] in the air of the cabin" of the plane.  (FAC ¶ 14.)  Seeking to tend to himself, Rodriguez left his seat and moved toward the plane's restroom, but "while attempting to enter the restroom[,] he lost consciousness and his body came into contact with a part of the airline structure."  (FAC ¶ 15.)  The passenger seated directly next to Rodriguez also lost consciousness, and both passengers "had to be attended to by [Norwegian] employees . . . ."  (FAC ¶ 16.)  Despite representations by Norwegian employees aboard the flight that he would promptly receive "medical assistance upon arrival in Oslo," Rodriguez received no such assistance and, as a result, sustained injuries that were worse than what he would have sustained from the episode had medical treatment been promptly administered.  (FAC ¶¶ 17 – 19.)

Rodriguez sustained "personal injuries[] requiring medical care and treatment[] and resulting in vocational and functional disability, including a punctured lung, pneumothorax, severed artery, broken ribs, etc. which required surgery and hospitalization in Oslo, Norway."  (FAC ¶ 20.)  From the episode, Rodriguez experienced "great physical pain, nervous shock and mental anguish as well as emotional upset," some of which is "permanent."  (FAC ¶ 24.)  Additionally, Rodriguez "incur[red] large sums" in medical and non-medical expenses obtaining treatment for his condition, a condition which today still "will require additional medical and hospital treatment and [related] expense[s]" to "cure him of said injuries."  (FAC ¶¶ 24, 25.)

---

[1] The facts set forth in this opinion are taken from the operative complaint and are assumed true for purposes of this motion.

### 2. Norwegian's Bankruptcy

On November 18, 2020, Norwegian's subsidiaries, Norwegian Group ("Norwegian Group") and Norwegian Air International ("Norwegian International," and, together with Norwegian Group, the "Subsidiaries"), initiated corporate restructuring in the Irish courts, the jurisdiction where the Subsidiaries were domiciled. (ECF No. 33 ("O'Grady Decl.") ¶ 6.) On December 7, 2020, Norwegian, the corporate parent which is domiciled in Norway, applied for restructuring under Norwegian law. (O'Grady Decl. ¶ 9.) On March 12, 2021, Norwegian filed for Chapter 15 Recognition of a Foreign Proceeding in the United States Bankruptcy Court for the Southern District of New York. (O'Grady Decl. ¶ 13.) On April 28, 2021, the Bankruptcy Court for the Southern District of New York entered an Order granting Norwegian the relief it sought, including a channeling injunction staying pending litigation against the debtors under section 108(c) of the United States Bankruptcy Code. (O'Grady Decl. ¶ 16; ECF No. 33-3 "Exhibit C") at 1.) On July 8, 2021, the Norwegian Air Shuttle Chapter 15 Bankruptcy Case was deemed fully administered and closed. (O'Grady Decl. ¶ 17; ECF No. 33-4 ("Exhibit D") at 1.)

### B. Procedural History

On October 3, 2022, Rodriguez initiated this action in the Supreme Court of the State of New York for the County of New York, raising common-law contract and tort claims, including negligence and common carrier liability. (ECF No. 1-1 ("Compl.") ¶¶ 1, 20, 22, 29.) It named Norwegian, Norwegian Group, Norwegian International, and "John Doe Corporation" (together with Norwegian and Subsidiaries, "Defendants"). (Compl. ¶¶ 1 – 9.)

On December 2, 2022, Defendants filed a notice of removal in this Court based on both (1) original federal subject matter jurisdiction under the Montreal Convention for all accidents aboard aircraft traveling between signatory states and (2) diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) Plaintiff initially resisted this Court's jurisdiction. (ECF No. 9.) However,

3

Plaintiff later filed an Amended Complaint (that is, the FAC) directly in this Court raising a claim under the Montreal Convention, an international treaty ratified by the United States Senate. (FAC ¶ 30.) The FAC re-iterated the same common-law theories of liability for Rodriguez's accidents under New York tort law (Claim 1) as well as under New York contract law (Claim 3), while adding the claim under the Montreal Convention (Claim 2).

Defendants moved to dismiss the Amended Complaint on December 22, 2022, arguing that (1) Plaintiff failed to state a claim under Federal Rule 12(b)(6) because the Montreal Convention preempted all other theories of liability and liability under the Convention itself is subject to a two-year limitations period; and (2) Plaintiff has fail to establish this Court's personal jurisdiction over Defendants under Federal Rule 12(b)(3).

## II.     Legal Standard

To survive a Federal Rule 12(b)(6) motion, a plaintiff must show that the complaint alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Complaints have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Glob. Hub. Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208 – 09 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

## III.     Discussion

### A.     Preemption (Claims 1 and 3)

Defendants first argue that the two claims that do not arise under the Montreal Convention — that is, Plaintiff's common-law tort and contract claims — must be dismissed as

4

preempted by the treaty. (ECF No. 41 ("Def. Memo") at 5 – 7.) As the Supreme Court has stated, any "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' if not allowed under the Convention, is not available at all." *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999) (internal citations omitted). Here, the FAC expressly alleges that Plaintiff's personal injuries occurred "on board an aircraft." It follows that all of Plaintiff's non-treaty claims must be dismissed as preempted by the Convention. *See King v. Am. Airlines*, 284 F.3d 352, 356 – 57 (2d Cir. 2002) (holding that the Montreal Convention "created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of international transportation of persons, baggage, or goods performed by an aircraft").[2]

### B. Montreal Convention (Claim 2)

"The Montreal Convention is a multilateral treaty that 'applies to all international carriage of persons, baggage or cargo performed by an aircraft.'"[3] *Mata v. Avianca, Inc.*, 2023 WL 4138427, at *2 (S.D.N.Y. June 22, 2023) (Castel, J.) (quoting Montreal Convention, ch. I

---

[2] The FAC appears to suggest that because the Montreal Convention theory of liability is one pleaded "in the alternative," Rodriguez can still resist removal. (FAC ¶ 30.) Because he does not raise this argument in his motion papers, however, and because the FAC affirmatively asserts a federal claim, Rodriguez appears to have abandoned his argument for remand. In any event, Rodriguez's arguments in his motion to remand are without merit. First, as explained in Defendants' brief, Defendants' removal to this Court was timely because it was within 30 days of service. (ECF No. 35 at 5 – 10.) Second, Defendants were not required to obtain the consent of "Norwegian Group" prior to removal because no such legal entity exists. (ECF No. 35 at 10 – 11.) Third, Defendants' failure to attach the summons to the notice of removal was not a jurisdictional defect and may be cured. Plaintiff's motion to remand (ECF No. 9) is therefore denied.

[3] The Second Circuit interprets the Montreal Convention in lockstep with the Warsaw Convention (its antecedent treaty) for purposes of interpretive precedents. As it has explained, "[t]he Montreal Convention was promulgated to 'reform the Warsaw Convention so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists.'" *Cohen*, 13 F.4th at 244 (quoting *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)).

art. 1). The Convention reaches all "accidents" in international carriage, which the Second Circuit has defined as any "unexpected or unusual event or happening that is external to the passenger." *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 244 – 45 (2d Cir. 2021) (per curiam) (quoting *Air France v. Saks*, 470 U.S. 392, 405 (1985)). The FAC without a doubt concerns liability for an accident in international carriage under the Convention.

"Under Rule 12(b)(6), '[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief,' including on the grounds that the plaintiff's claim is time-barred." *Ireland v. AMR Corp.*, 20 F. Supp. 3d 341, 343 (E.D.N.Y. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). The Convention incorporates such a time bar: Among other things, in order to state a claim under the Convention, a plaintiff must satisfy its strict two-year filing condition precedent to suit. "Under the Convention, '[t]he right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped." *Mata*, 2023 WL 4138427, at *2 (quoting Montreal Convention, ch. III art. 35 § 1). If an action is "brought more than two years after the date of the arrival," then it is "properly dismissed on a Rule 12(b)(6) motion." *Mata*, 2023 WL 4138427, at *2 (citing *Cohen*, 13 F.4th at 246).

The Bankruptcy Code itself provides that if "applicable nonbankruptcy law . . . fixes a period for commencing . . . a civil action . . . against [a] debtor, . . . then such a period does not expire until the later of . . . the end of such period . . . or 30 days after notice of termination of expiration of the stay . . . ." 11 U.S.C. § 108(c). On Rodriguez's reading of section 108, then, the Subsidiaries filed for bankruptcy in Ireland on November 18, 2020. (Opp at 3.)

6

Though using slightly different terminology, this argument is indistinguishable from one raised in *Mata* "urg[ing] that th[e] action was timely brought because the automatic bankruptcy stay tolled the Montreal Convention's limitations period." *Id.* at *3. But Judge Castel persuasively rejected that argument as inconsistent with Second Circuit precedent. The courts of this circuit "ha[ve] interpreted the . . . two-year period as a strict condition precedent to the bringing of a claim, as opposed to a limitations period potentially subject to equitable tolling principles." *Id.* (citing *Fishman by Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138,143 (2d Cir. 1998)). Under the Second Circuit's decision in *Fishman by Fishman*, the two-year limitations period contained in Article 35 of the Convention is not a statute of limitations, which can be subject to tolling, but, instead, a "strict condition precedent" to any litigation, which cannot be altered. *Fishman by Fishman*, 132 F.3d at 142.

For the same reasons as Judge Castel, the Court is unpersuaded that a section 108(c) injunction reset the clock on Rodriguez's obligation to bring a claim within two years of his flight touching down in Oslo. Here, it is undisputed that Rodriguez filed his claim for the first time approximately three years after the date of arrival — a difference between November 2019 and October 2022, which operates as a disability to suit. Plaintiff's sole response is that Defendants' initiation of bankruptcy proceedings, including obtaining a channeling injunction staying pending claims against Defendants, stopped the clock on Plaintiff's two-year window.

The Court holds that section 108(c) of the Bankruptcy Code does not alter a claimant's time-to-file obligations under the Montreal Convention nor reset the clock on them. Accordingly, the FAC must be dismissed as time barred. To avoid this result, Rodriguez attempts a semantic move: to characterize the relief they request as not technically statutory tolling. Whatever the nomenclature used, this argument fails. "[T]he Second Circuit [has long

7

held] . . . that it was the purpose of the provision's drafters to eliminate the uncertainty that would arise from actions under the treaty being 'subjected to various tolling provisions of the laws of the member states.'" *Ireland*, 20 F. Supp. 3d 341, 347 (E.D.N.Y. 1998) (quoting *Fishman by Fishman*, 132 F.3d at 144). Whatever label one assigns to Plaintiff's request, permitting this suit frustrates the purpose of the treaty: "the Montreal Convention was adopted to promote uniform enforcement between signatory states." *Mata*, 2023 WL 4138427, at *3.

Here, endorsement of Plaintiff's view would elevate "local" American procedures over the Convention's globally uniform two-year condition, which would "undermine th[e] goal" of the entire treaty. *Mata*, 2023 WL 4138427, at *3. Like Judge Castel in *Mata*, this Court concludes that "[u]nder the language of the treaty, as interpreted by [the Second Circuit], the two-year limitation is a hard stop after which [the] [P]laintiff's right to sue [was] extinguished." *Id.* Dispelling any lingering doubts, the Second Circuit itself recently re-emphasized this precise point. *See Cohen*, 13 F.4th at 246. Rodriguez's response — that a section 108(c) injunction is not *exactly* the same as a normal tolling or statute of limitations — misses the forest for the trees, and the Court "sees no reason to depart from this rule in the case of a bankruptcy state." *Mata*, 2023 WL 4138427, at *3 (quoting *Ireland*, 20 F. Supp. 3d at 347.)

In fact, this argument was raised by the plaintiffs in *Ireland v. AMR Corporation*, the only other recent district court opinion in this circuit addressing the relationship between section 180(c) and Article 35. But the *Ireland* court dispensed with it in short order. The Court agrees wholly with Judge Ross's observation that "[a]lthough section 108(c) operates differently from a typical stop-the-clock tolling provision of the kind addressed [by the Second Circuit] in *Fishman*, it has the same effect as a tolling provision in that it acts to extend the statute of limitations

8

beyond the date on which it would otherwise expire" and, therefore, the outcome should be the same. *Ireland*, 20 F. Supp. 3d at 347 (citing 9B Am. Jur. 2d B.R. § 1734).

Plaintiff does not respond to Defendants' submission of the recent *Mata* opinion. (ECF No. 49.) And as to the *Ireland* case, Plaintiff expressly agrees in his papers that *Ireland* would control and mandate dismissal except for the single reason that, here and unlike *Ireland*, Rodriguez lacked "notice" of his filing obligations: "In *Ireland*, the plaintiff had notice of the bankruptcy as it was a scheduled creditor in the bankruptcy." (ECF No. 46 ("Pl. Opp.") at 9.)

This evinces a fundamental misunderstanding of Judge Ross's opinion in *Ireland*. The rationale in *Ireland* is not principally based on notice. *Ireland*'s logic is that, in ratifying the Convention, Congress expressed its judgment that uniform enforcement of the Montreal Convention is more important than protecting individual litigant fairness and participation rights in governing international air travel. *See Ireland*, 20 F. Supp. 3d at 347 ("Subjecting actions under the treat to this extension of time under section 108(c) creates the same risk of uncertainty that the [Treaty's] drafters sought to avoid by creating a hard stop after two years at which time a plaintiff's rights under the treaty were extinguished."); *see also id.* ("As the full title of the Montreal Convention suggests, it was the treaty's aim to unify the rules applicable to international air carriage between member states." (citing *Fishman by Fishman v. Delta Air Lines, Inc.*, 938 F. Supp. 228, 232 (S.D.N.Y. 1996)).

The *Ireland* court also rejected an equitable tolling argument that is indistinguishable from Rodriguez's. The court explained that "it is difficult to see how any unfairness that might be worked here is different from the kind of unfairness inherent in situations where tolling on other statutory or equitable grounds is unavailable to extend Article 35's two-year limitation period." *Ireland*, 20 F. Supp. 3d at 348. Rather, the court persuasively explained that this sort of

9

equitable tolling is precisely the threat to uniformity that the treaty is meant to address: "In rejecting local tolling provisions in favor of a hard-stop two-year limitation provision, the provision's drafters apparently concluded that the benefits of uniformity outweighed the risk of unfairness." *Id*. Similarly here, any other result would be contrary to "wh[at] the Second Circuit [has consistently] held . . . ." *Id.*

Plaintiff argues that the "last in time rule" operates to elevate the text of section 108(c) over that of the Convention because some relevant parts of the Montreal Convention use almost identical language to the Warsaw Convention, which was enacted in 1929. (Pl. Opp. at 9 – 10.) The Court does not base its decision on the last in time rule. But it plainly does not help Rodriguez here, since the current version of the Bankruptcy Code, including section 108, was enacted in 1978, while the Montreal Convention was ratified by the Senate in 2003.

Finally, Rodriguez argues that under the Second Circuit's decision in *Aslandis v. U.S. Lines, Inc.*, in which the court held that a section 108(c) injunction extended the Jones Act's three-year statute of limitations by 30 days, permitting suit. 7 F.3d 1067, 1073 – 75 (2d Cir. 1993). For reasons already explained, this observation is irrelevant. The Second Circuit has long held Article 35 of the Montreal Convention to be a "condition precedent" to any kind of lawsuit, not a statute of limitations period, which could be, as in *Aslandis*, subject to tolling or extension by a bankruptcy order. *Id.* at 1075.

### C.    Personal Jurisdiction

Because the Convention's time-bar provision, standing alone, provides a necessary and sufficient justification for procedural dismissal under Federal Rule 12(b)(6), the Court need not resolve Defendants' alternative arguments for dismissal under Federal Rule 12(b)(3) for lack of personal jurisdiction over some or all of Defendants. *See Biragov v. Dreamdealers USA, LLC*, 2021 WL 5303918, at *3 (S.D.N.Y. Nov. 15, 2021) ("The Supreme Court has recognized that,"

despite unresolved, outstanding personal jurisdiction issues, "[f]ederal courts have leeway to choose among threshold grounds for denying audience to a case on the merits" so long as the "particular ground" relied on "represents the sort of threshold question that may be resolved before addressing jurisdiction" (quoting *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 – 32 (2007)).

Whether Rodriguez's claims are time-barred, compelling dismissal, is a threshold question readily resolvable without addressing personal jurisdiction. Since Rodriguez's claims are time-barred, the Court need not decide the personal jurisdiction issue.

### IV.   Conclusion

For the foregoing reasons, the Defendants' motion to dismiss the First Amended Complaint is GRANTED, and the complaint is DISMISSED under Rule 12(b)(6).

The Clerk of Court is respectfully directed to close the motions at ECF Numbers 9 and 40 and to close this case.

SO ORDERED.

Dated: August 21, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge